J-S51018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.E.R.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.S., III, FATHER | : | No. 561 MDA 2019 |

Appeal from the Decree Entered November 13, 2018
In the Court of Common Pleas of Huntingdon County
Orphans' Court at No(s): OC-2017-38

BEFORE: PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.E.: **FILED OCTOBER 08, 2019**

Appellant, K.S., III ("Father"), appeals from the decree entered in the Orphans' court of the Huntingdon County Court of Common Pleas, which granted the petition of Appellees, D.M.P. ("Mother") and M.D.P. ("Stepfather"), for involuntary termination of Father's parental rights to his minor child, R.E.R.S. ("Child"). We affirm.

The relevant facts and procedural history of this case are as follows. Father and Mother are the natural parents of Child, born in December 2015. Father has been incarcerated since July 18, 2015 (before Child was born), and is currently serving a sentence of eleven (11) to twenty-five (25) years' imprisonment for third-degree murder. Mother is now married to Stepfather. On December 11, 2017, Mother and Stepfather filed a petition for involuntary termination of Father's parental rights to Child. Father filed a *pro se* affidavit on January 19, 2018, in opposition to the termination petition. The Orphans' court appointed counsel for Father and an attorney-guardian *ad litem* ("GAL")

for Child. On May 9, 2018, and October 10, 2018, the court held hearings on the termination petition. At the time of the hearings, Child was less than three years old.[1] The court ultimately granted the petition on November 13, 2018, and terminated Father's parental rights to Child. Father filed a timely *pro se* notice of appeal on November 21, 2018.[2]

On April 11, 2019, Father's counsel filed in this Court an application to withdraw. The Orphans' court ordered Father on April 16, 2019, to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. On April 17, 2019, this Court granted counsel's application to withdraw, remanded for the Orphans' court to determine whether Father was eligible for appointment of new counsel, and retained jurisdiction. On April 29, 2019, the Orphans' court appointed new counsel for Father.

Father filed a *pro se* Rule 1925 statement on May 6, 2019. On May 7, 2019, new counsel filed a motion for an extension of time to file a Rule 1925 statement, which the Orphans' court granted the following day. On June 6, 2019, Father filed another *pro se* Rule 1925 statement. Father filed a counseled Rule 1925 statement on June 24, 2019.

---

[1] ***See In Re: T.S.***, ___ Pa. ___, 192 A.3d 1080 (2018), *cert. denied*, ___ U.S. ___, 139 S.Ct. 1187, 203 L.Ed.2d 220 (2019) (establishing presumption that child who is three years of age or younger cannot form subjective, articulable preference to be advanced during contested termination proceedings).

[2] Notwithstanding the procedural anomalies surrounding the filing of Father's notice of appeal, the court ultimately directed the clerk of courts to mark the notice of appeal as filed on November 21, 2018.

Father raises the following issues for our review:

> WHETHER THE [ORPHANS'] COURT LACKED COMPETENT
> EVIDENCE TO SUPPORT THE COURT'S INFERENCES OR
> CONCLUSIONS OF LAW THAT [APPELLEES] PROVED, BY
> CLEAR AND CONVINCING EVIDENCE, GROUNDS FOR
> TERMINATION UNDER 23 PA.C.S.[A.] § 2511(A)(1)[?]
>
> WHETHER THE [ORPHANS'] COURT ERRED WHEN IT
> CONCLUDED THAT CONTINUING PARENTAL RIGHTS FOR
> [APPELLANT] WOULD BE CONTRARY TO…CHILD'S BEST
> INTEREST[?]

(Father's Brief at 4).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our
> standard of review is limited to determining whether the
> order of the trial court is supported by competent evidence,
> and whether the trial court gave adequate consideration to
> the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or
> insufficient evidentiary support for the trial court's
> decision, the decree must stand. … We must employ
> a broad, comprehensive review of the record in order
> to determine whether the trial court's decision is
> supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en
> banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004)
> (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder
> of fact, is the sole determiner of the credibility of
> witnesses and all conflicts in testimony are to be
> resolved by [the] finder of fact. The burden of proof

is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

Section 2512 governs who may bring a petition to terminate parental rights, and what the petition must contain, as follows:

### § 2512. Petition for involuntary termination

**(a)   Who may file.**—A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

(1)   Either parent when termination is sought with respect to the other parent.

(2)   An agency.

(3)   The individual having custody or standing in *loco parentis* to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

(4)    An attorney representing a child or a guardian ad litem representing a child who has been adjudicated dependent under 42 Pa.C.S.A § 6341(c) (relating to adjudication).

**(b)    Contents.**—The petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights.  The petition filed under this section shall also contain an averment that the petitioner will assume custody of the child until such time as the child is adopted. If the petitioner is an agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists.

*    *    *

23 Pa.C.S.A. § 2512.  If the petitioner is not an agency, then the petition must include "an averment that an adoption is presently contemplated or that a person with a present intention to adopt exists." ***In re Adoption of J.F.D.***, 782 A.2d 564, 567 (Pa.Super. 2001).  In any event, the burden of proof remains with the petitioning party, who must establish valid grounds for termination by clear and convincing evidence. ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa.Super. 2003).

After a thorough review of the record, Father's brief, the applicable law, and the well-reasoned opinion of the Honorable George N. Zanic, P.J., we conclude Father's issues merit no relief.  The Orphans' court opinion comprehensively discusses and properly disposes of the questions presented. (***See*** Orphans' Court Opinion, filed November 16, 2018, at 3-5) (finding: Father has failed to perform any parental duties for Child during six months preceding termination petition; Father has been incarcerated for Child's entire

life; for majority of Child's life, Father has had no contact with Child, because he claims he was unaware of Mother's whereabouts; Father began communicating with Child *via* cards and biweekly phone calls only after Mother and Stepfather filed termination petition; Stepfather has assumed role of stepparent for Child and has cared for Child for several years; Child has developed bond with Stepfather, and Child looks to him as paternal role model; it is in best interest of Child to maintain stability in loving, supportive environment she has at Mother and Stepfather's home; it is not in best interest of Child to visit Father in prison or communicate with Father *via* mail and biweekly phone calls).  Accordingly, we affirm based on the Orphans' court opinion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2019

## IN THE COURT OF COMMON PLEAS OF HUNTINGDON COUNTY, PENNSYLVANIA
## ORPHANS' COURT DIVISION

In re: Involuntary Termination of Parental     : NO.: OC-2017-00038
Rights of K.S., III, Father, to: R.E.R.S.,     :
A Minor     :

### MEMORANDUM

After hearing, the Court finds that Petitioners, M.D.P. and D.M.P. ., have established a legal basis for terminating the parental rights of K.O.S. with respect to the child, R.E.R.S., pursuant to 23 Pa.C.S.A. § 2511(a)(1), specifically:

1. K.O.S., by conduct continuing for a period of at least six (6) months immediately preceding the filing of the petition, either has evidenced a settled purpose of relinquishing parental claims to the child or has refused or failed to perform parental duties.

2. Specifically, K.O.S., has for a period exceeding six (6) months prior to the filing of this petition, failed or otherwise refused or neglected to have any contact with the child whatsoever.

3. The continuing parental rights of K.O.S. would be contrary to the child's best interest and well-being.

### FINDINGS OF FACT

The Court makes the following factual findings in support of the termination of parental rights of Natural Father:

1. R.E.R.S was born on December , 2015.

2. The natural mother of R.E.R.S. is D.M.P .

3. The natural father of R.E.R.S. is K.O.S .

4. D.M.P. is married to 'M.D.P , who is the step-father of R.E.R.S.

5. K.O.S. has been incarcerated since July 18, 2015, at which time D.M.P. was pregnant with R.E.R.S.

FILED _November 16_ , 20 _18_
Virginia Cooper Register of Wills
and Clerk of the Orphans' Court
Huntingdon County, Pennsylvania

1

26

6. K.O.S. is currently housed at the State Correctional Institution at Albion in Albion, Pennsylvania.

7. On February 24, 2017, K.O.S. entered a guilty plea in Cambria County to Murder of the Third Degree (18 Pa.C.S. § 2502(c)).

8. K.O.S. was sentenced on the same date to a minimum of eleven (11) years and a maximum of twenty-five (25) years, with an effective date of July 18, 2015.

9. K.O.S.'s earliest possible parole date is July 18, 2026.

10. K.O.S.'s maximum incarceration date is July 18, 2040.

11. He is not eligible for early release in any form or capacity.

12. There are no pending appeals of K.O.S.'s homicide conviction.

13. K.O.S. has remained incarcerated for the entirety of R.E.R.S.'s life.

14. R.E.R.S. will be between the ages of 11 and 25 years old at the time K.O.S. is released from prison.

15. K.O.S. has physically held R.E.R.S. only once, at the time of his sentencing.

16. When R.E.R.S. was an infant, D.M.P. would bring her to the Cambria County Correctional Facility on Saturdays to visit with K.O.S.

17. These visits occurred behind glass and for limited periods of time.

18. D.M.P. stopped visitations between K.O.S. and R.E.R.S. when he was transferred to SCI-Albion.

19. K.O.S. has not seen R.E.R.S. since she was approximately three months old.

20. K.O.S. began sending letters and pictures to R.E.R.S. after the petition for termination had been filed.

21. K.O.S. is participating in parenting classes offered by the Department of Corrections.

22. During periods of partial physical custody by K.O.S.'s mother every other Saturday, K.O.S. is able to make telephone contact with R.E.R.S.

23. K.O.S. has never performed daily parental duties or provided care to R.E.R.S.

2

## ANALYSIS

The Pennsylvania Superior Court has explained the standard by which courts should decide parental termination cases:

> "Termination of parental rights is controlled by statute. Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond."

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007).

Courts have the authority to terminate parental rights where any one subsection of 23 Pa.C.S. §2511(a) is satisfied and the factors in §2511(b) are considered. In re Z.P., 994 A.2d 1108, 1117 (Pa. Super. 2010). In this case, D.M.P. and M.D.P. petitioned for the termination of K.O.S.'s parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), which states:

> The parent by conduct continuing for a period of at least six (6) months immediately preceding the filing of the petition, either has evidenced a settled purpose of relinquishing parental claims to the child or has refused or failed to perform parental duties.

The Petitioners allege K.O.S. failed to perform parental duties for R.E.R.S. for six (6) months preceding the filing of this petition based on his incarceration in a state correctional facility. Incarceration will not disqualify a parent from resuming parental responsibilities as long as the parent will be released from incarceration "quickly enough to permit the court to provide the child with timely permanency upon reunification." In re: Adoption of S.P., 47 A.3d 817, 829-30 (Pa. 2012).

> Where a parent is incarcerated, the fact of incarceration does not, in itself, provide grounds for the termination of parental rights. Id. at 286. However, a parent's

3

responsibilities are not tolled during incarceration. *Id.* The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his or her child. In re the Adoption of Dale, A., II, *supra* at 302. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his or her children. In the Interest of A.P., 692 A.2d 240, 245 (Pa. Super. 1997) (internal citation omitted).

This Court finds the Petitioners have established a legal basis for terminating the parental rights of K.O.S., pursuant to 23 Pa.C.S. §2511(a), as he has failed to perform any parental duties with respect to R.E.R.S. within the last six (6) months preceding this petition.

It is clear that K.O.S. has been incarcerated for not only the previous six (6) months, but his daughter's entire three-year life and has therefore been unable to perform any parental duties whatsoever. For the majority of this time, K.O.S. has had no contact with R.E.R.S. because he claims he was unaware of D.M.P.'s whereabouts. It was not until the parties originally came to court on this petition in May 2018 that K.O.S. began contacting R.E.R.S. via cards and biweekly telephone calls.

We believe K.O.S. is genuine in his desire to be a parent and establish a relationship with R.E.R.S., however his long-term incarceration prevents him from doing so. Despite whatever good intentions he may have, K.O.S. has never fulfilled any parental duties for R.E.R.S.; he has never changed a diaper, bathed, fed, or consoled her. D.M.P.'s husband, M.D.P., has assumed the role of stepfather and has cared for R.E.R.S. as a parent on a daily basis for several years. R.E.R.S. and M.D.P. have developed a bond and R.E.R.S. looks to him as a paternal role model.

Not only has K.O.S. never fulfilled the role of parent, his interactions with his daughter will be limited to cards and occasional telephone calls until 2026 at a minimum. If K.O.S. is released from incarceration at that time, R.E.R.S. will be eleven (11) years old, and he will then have to begin establishing a meaningful relationship with her.

4

Having found that grounds for termination exist under § 2511(a), it is our responsibility to now consider the needs and best interests of the children pursuant to § 2511(b).

It is in the best interest of R.E.R.S. to maintain stability in a loving and supportive environment. She has a stable, loving environment at home with her mother, step-father, and step siblings. She is well taken care of and provided for by her mother and step-father, as well as her paternal grandparents. We believe it is not in the best interest of R.E.R.S. to visit K.O.S. in state prison and try to establish a relationship through the confines of an inmate visitation room. Nor do we believe sporadic contact with K.O.S., via mail and biweekly telephone calls, serves any of R.E.R.S.'s needs or interests.

An Order consistent with this Opinion was entered on November 13, 2018.

BY THE COURT,

George N. Zanic, P.J.

5